Marshall, C. J.
This is a suit in mandamus originally filed in this court upon the relation of the prosecuting attorney of Franklin county, Ohio, against the county auditor of Union county, Ohio, alleging that the Methodist Children’s Home Association of Worthington, Ohio, a corporation not for profit, located at Worthington in Franklin county, maintains a private children’s home in Worthington village school district in Franklin county. The home is a private institution in the sense that it is not supported either in whole or in part by taxes, and it is clearly not a county, semi-public, or district children’s home. Among the inmates of the home are children of school age, who, before becoming inmates of the home, had a legal residence in other counties. During the school years beginning September 1,1917, and September 1,1918, there was one child in the home who prior to his admission was a resident of the city of Marysville in Union county, Ohio. During the school year beginning September 1, 1919, there were four such children who formerly resided in Union county. During those years reports were filed in the office of the county auditor of Franklin county, as required by Section 7677, General Code, showing the average per capita cost, except for improvements and repairs, of the elementary schools in the Worthington school district, which reports disclosed the names and former residences of all inmates of said home in attendance upon the schools of the Worthington school district, and the duration of such attendance. Thereupon the county auditor of Franklin county estimated the tuition of the inmates of said home chargeable to the various school districts, including the tuition of the children formerly re *319 siding in Union county, and certified to the auditor of Union county the amounts due for the tuition of said children in the total sum of $132.70, and requested the auditor to issue his warrant on the treasurer of Union county for that amount, which said auditor neglected and refused to do.
To the petition the prosecuting attorney of Union county filed a demurrer on the ground that the petition does not state facts sufficient to constitute a cause of action, it being claimed that the law under which the aforesaid action was taken was in violation of the Constitution of Ohio. No question other than the unconstitutionality of the statutes is urged in support of the demurrer.
Whatever liability exists is created by the provisions of Sections 7681, 7677 and 7678, General Code. Section 7681, among other provisions, contains a provision relating to private children’s homes as follows: “The board of education may admit the inmates of a private children’s home or orphan asylum located in the district, with or without the payment of tuition fees, as may be agreed upon: provided any child who is an inmate of such a home or asylum and previous to admission was a resident of the school district in which such home or asylum is located shall be entitled to free education; and provided, any such inmate who attends the public schools was prior to admission to such home or asylum a resident of another school district of the state of Ohio and a tuition fee is charged, the same method of reimbursement shall be followed as is provided in Sections 7677 and 7678 * *
Section 7677 provides for the filing of the reports referred to in the petition, and which are alleged to have been filed, and the demurrer admitting all *320 well-pleaded allegations will have to be determined on the theory that the reports were properly filed and all calculations properly made. By the provisions of that section the average per capita cost of the elementary schools of any such district shall not include “improvements and repairs.” It is presumed “improvements and repairs” refers to the school plant and equipment, although it is not definitely so stated.
Section 7678, General Code, above referred to, relates to the duties of the county auditor upon the filing of the reports required by Section 7677, and provides: “In case there are inmates from another county, the county auditor of the county m which the home is located shall certify the amount to the auditor of the county of such children’s residence who shall forthwith issue his warrant on treasurer of the same county for such amount, and shall proceed to apportion the proper amounts to the various school districts of such county in the manner described above.”
The quotations from the above-enumerated sections contain all of the statutory provisions pertinent to the issues in this case, all of said quoted portions are entirely free from ambiguity, and it only remains to determine whether they are in conflict with any provision of the state constitution.
Counsel for the auditor of Union county urges that these provisions are in conflict with Section 26, Article II, which provides that all laws of' a general nature shall have uniform operation throughout the state. Beyond the mere reference to that section, counsel has not in argument pointed out in what manner these provisions do not have uniform oper *321 ation, and as this court is unable to observe any lack of uniformity in their operation this section may therefore be dismissed without further comment.
Counsel further points out the provision of Section 1, Article VI, which provides that the principal of all funds arising from the sale of public lands or other property entrusted to the state for educational purposes shall be preserved inviolate, and the income applied to the specific objects of the original grants or appropriations. It nowhere appears in the petition, however, that any of the principal of the state fund is being impaired or that any of its income is being applied to unwarranted purposes. Neither does counsel in argument point out any express or implied violation of that section.
Counsel refers also to Section 2, Article VI, which we will quote in its entirety: “The general assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state; but no religious or other sect, or sects, shall ever have any exclusive right to, or control of, any part of the school funds of this state.”
We do not observe that this section has any application to the instant case, but if by any process of reasoning it should be made applicable it would seem that the first part of the section does not place restrictions upon legislative power, but rather lodges within the legislature a rather liberal discretion in carrying out its plain injunction to “secure a thorough and efficient system of common schools throughout the state.” If on the other hand counsel refers to the latter part of the section, in which relig *322 ious sects are forbidden to have any exclusive right to or control of any part of the school funds, of the state, the answer is found in the fact that the record clearly shows that it is not sought to exercise any such right or control. It is true that the name of the home indicates that it is being maintained by a religious denomination, but it is not sought to compel the state or any subdivision thereof to maintain a school within the home. It is only sought to have the children residents of the state of Ohio who are maintained in the home educated in the public schools of the state the same as any other children.
The last section of the constitution referred to by counsel is Section 5, Article XII, which provides that “No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.” This proceeding, however, does not involve the levy of a tax. That section can only have application to taxing authorities.
It is only fair to say that counsel in the oral argument of the case gave but scant attention to the constitutional provisions hereinbefore referred to, and in the course of oral argument contended that these statutory provisions are not valid because they amount to taxation without representation, for the reason thal. the taxpayers of Union county have no control over the management of the schools of the Worthington district. We fear that counsel has mistaken the Declaration of Independence of 1776 for the Ohio Constitution. It has been repeatedly declared that before a statute can be declared to be unconstitutional it must be violative of some specific provision of the written constitution, and that it is *323 not sufficient that it shall be contrary to natural justice or public policy or other latent spirit pervading or underlying the constitution without either expressly or impliedly violating its terms. This principle has been so often declared by this court that it is unnecessary to cite authorities.
It is further urged that Union county has- a county children’s home and that it is therefore unjust to take children from Union county to a private children’s home in some other county to be educated in such other county and the expense thereof charged to the taxpayers of Union county. Surely [Tnion county has every advantage in this arrangement, because if the children were maintained at the Union county children’s home that county would not only have some expense of education but it would have the additional expense of care and maintenance. The statistics on file in the office of the director of education disclose that the per capita cost of maintaining the schools in the Marysville district where the Union county children’s home is located is in excess of the tuition charged by Franklin county against Union county on account of the children of the Methodist Home at Worthington. Those statistics show that for the year 1919 the per capita cost at Marysville was. $4.75 per month, for the year 1920 $3.76 per month, for the year 1921 $3.95 per month. Without taking into consideration the cost of care and maintenance of the children, there is a net saving to Union county in tuition alone by having the children educated in the schools of the Worthington district.
There is another feature of this matter which is worthy of consideration. No question seems, to be raised as to the liability of the school district of *324 the former residence of children who are inmates ,of a county, semi-public, or district children’s home, and it is difficult to see upon what reason or principle there should be any discrimination in favor of children in public homes and a'gainst children in private homes. The prosecuting attorney of Union county, has discussed this matter upon the theory that an injustice is being done to Union county. But we fail to see that it is just that school districts of the last residence should be responsible for children who are being maintained in public homes, but that it becomes unjust if it so happens that the children are either fortunate or unfortunate enough to be maintained in a private home.
Whether or not the provisions of the above-quoted sections are unjust, or whether those provisions are wise or unwise, is not a matter of judicial concern. It is clearly settled that such considerations do not reflect upon the question of constitutional authority.
Finally it is urged that there is an adequate remedy at law. It is not necessary to discuss this feature of the case, because this court has recently settled that proposition in a case which is exactly similar. In the case of State, ex rel. Price, Atty. Genl., v. Huwe, Treas., 103 Ohio St., 546, which was decided December 6, 1921, this court had under consideration a suit in mandamus to compel the auditor of Hamilton county to draw his warrant upon the treasurer of Hamilton county to pay for the care and maintenance of persons from that county confined in and being cared for and supported in the state institution for the feeble minded. The remedial provisions of Section 1815-12, General Code, are *325 similar to the remedial provisions of Sections 7677 and 7678, General Code. The two propositions are so perfectly parallel that we refer.to the former adjudication as being conclusive upon the question of there being an adequate remedy at law.
It is therefore, the judgment of this court that the demurrer is not well taken and should be overruled.

Demurrer to petition overruled.

Johnson, Robinson, Jones and Matthias, JJ., concur.